NICO29435)29IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| **Nicole Antakli**, | Case No.: 4:23-cv-12084-SDK-DRG |
| Plaintiff, | Honorable Shalina D. Kumar |
| vs. | Magistrate Judge David R. Grand |
| **Charge Enterprises, Inc.,** a Delaware corporation; **PTGi International Carrier Services, Inc.**, a Delaware corporation; and **ANS Advanced Network Services, LLC**, a New York limited liability company, | |
| Defendants. | |

| | |
|---|---|
| Raymond. J. Carey (P33266) | Robert Tice (P29435) |
| Rcarey@work-lawyers.com | rtice@littler.com |
| GASIOREK, MORGAN, GRECO, McCAULTY & KOTZIAN, P.C. | LITTLER MENDELSON, P.C. |
| 30500 Northwestern Highway | 200 Renaissance Center |
| Suite 425 | Suite 3110 |
| Farmington Hills, MI 48334 | Detroit, Michigan 48243 |
| Telephone:  248.865.0001 | Telephone:  313.446.6400 |
| Fax No.:      248.865.0002 | Fax No.:      313.446.6405 |
| | |
| Attorneys for Plaintiff | Attorneys for Defendants Charge Enterprises, Inc., ANS Advanced Network Services, LLC, and PTGi International Carrier Services, Inc. |

## DEFENDANTS CHARGE ENTERPRISES, INC., ANS NETWORK SERVICES, LLC, AND PTGI INTERNATIONAL CARRIER SERVICES,

## INC.'S ANSWER TO AMENDED COMPLAINT AND AFFIRMATIVE AND OTHER DEFENSES

Defendants Charge Enterprises, Inc., a Delaware corporation, ANS Advanced Network Serivces, LLC a New York limited liability company, and PTGi International Carrier Services, Inc. a Delaware corporation ("Defendant" or "Charge") by and through its attorneys, Littler Mendelson, P.C., and for its answer and affirmative and other defenses to Plaintiff Nicole Antakli's Amended Complaint, states as follows:

1.      This is an action by Ms. Antakli against the Charge Defendants for discrimination against her on account of her sex and interference with and deprivation of her right to be free from discrimination on account of her sex in violation of Michigan's Elliott-Larsen Civil Rights Act ("ELCRA"), M.C.L.A. §§ 37.2101, *et seq.;* unequal pay and interference with protected rights in violation of the Equal Pay Act of 1963, 29 U.S.C. §§ 201, et seq., *see* 29 U.S.C. § 206, 29 U.S.C. § 215(a)(3); breach of contract, promissory estoppel, unjust enrichment, and conversion in violation of Michigan common law; and conversion in violation of M.C.L.A. 600. 2919a. Ms. Antakli's claims are premised on the terms and conditions of and circumstances leading up to and including the termination of her for employment with the Charge Defendants, effective June 19, 2023.

**ANSWER:** Defendant admits that Plaintiff's Complaint purports to allege violations of Michigan's Elliott-Larsen Civil Rights Act ("ELCRA"), M.C.L.A.

§§ 37.2101, *et seq.;* unequal pay and interference with protected rights in violation of the Equal Pay Act of 1963, 29 U.S.C. §§ 201, et seq., *see* 29 U.S.C. § 206, 29 U.S.C. § 215(a)(3); breach of contract, promissory estoppel, unjust enrichment, and conversion in violation of Michigan common law; and conversion in violation of M.C.L.A. 600. 2919a but denies that it violated any of the above referenced laws in the manners asserted in the Complaint or in any other manner.

## PARTIES, AGENTS, AND REPRESENTATIVES

2.      Ms. Antakli is female who currently resides in the City of Birmingham, County of Oakland, State of Michigan, and formerly was employed by the Charge Defendants in the City of Birmingham, County of Oakland, State of Michigan.

**ANSWER:** Defendant lacks information or knowledge sufficient to form a belief about the truth of the allegations in Paragraph 2 of the Complaint regarding where Plaintiff resides and therefore, neither admits nor denies the allegations and leaves the Plaintiff to her proofs.

3.      Charge is a Delaware corporation with its offices and principal place of business located at 125 Park Avenue, 25th Floor, New York, New York 10017.

**ANSWER:** Defendant admits the allegations in Paragraph 3 of the Complaint.

4.      PTGi is a Delaware corporation with its offices and principal place of business located at 125 Park Avenue, 25th Floor, New York, New York 10017.

**ANSWER:** Defendant admits the allegations in Paragraph 4 of the Complaint.

5.     ANS is a New York limited liability corporation with its offices and principal place of business at 12 Elmwood Road, Albany, New York 12204-2410, which is registered to do and does business in Michigan and operates Charge Infrastructure as one of its unincorporated divisions.

**ANSWER:** Defendant admits the allegations in Paragraph 5 of the Complaint.

6.     Charge Infrastructure is an unincorporated division of ANS with its offices and principal place of business at 34100 Woodward Ave., Ste. 230, Birmingham, MI 48009.

**ANSWER:** Defendant admits the allegations in Paragraph 6 of the Complaint.

7.     Upon information and belief, Andrew Fox is a resident of the State of Florida. He is the former Chairman of the Board and Chief Executive Officer of Charge and remains a member of its Board of Directors.

**ANSWER:** Defendant admits only that Andrew Fox is the former Chairman of the Board and former Chief Executive Officer of Charge and remains a member of its Board of Directors.

8.     Upon information and belief, Craig Denson is a resident of the State of Florida. He is the interim Chief Executive Officer of Charge and has been the Chief Operating Officer and a Director of Charge since October, 2020, its Chief Compliance Officer since November, 2021, its Secretary since December, 2021, and was its Interim Chief Financial Officer from January, 2021, until September, 2021.

Prior to its acquisition by Charge in 2020, Mr. Denson had been the President and CEO of PTGi since May, 2012, and remained President of PTGi after its acquisition by Charge through at least the end of November, 2021.

**ANSWER:** Defendant admits that Mr. Denson was the CEO of PTGi from November 2021 to August 2023, Secretary from December 2021 to October 2022 and is the current President of PTGi.

9.     Upon information and belief, Paolo (Paul) Fettuccia is a resident of the State of New York. He has been the Chief Executive Officer and President of ANS, a subsidiary of Charge, since its acquisition by Charge in May, 2021.

**ANSWER:** Defendant admits the allegations in Paragraph 9 of the Complaint.

10.    Upon information and belief, Michael Wojtowicz is a resident of the State of New Jersey. He has been the Chief Executive Officer and President of B W Electrical Services, LLC ("BWES"), a subsidiary of Charge Enterprises, Inc, since its acquisition by Charge in December, 2021.

**ANSWER:** Defendant admits the allegations in Paragraph 10 of the Complaint.

## JURISDICTION  AND VENUE

11.    The amount in controversy exceeds $75,000 exclusive of interest and costs.

**ANSWER:** Defendant admits Plaintiff pleads the amount in controversy exceeds seventy-five thousand dollars ($75,000.00) but denies she is entitled to the same.

12.     This Court has subject matter jurisdiction over Plaintiff's claims under and pursuant to 28 USC § 1331 (federal question jurisdiction), 28 U.S.C. § 1332 (diversity jurisdiction), 28 U.S.C. §§ 1337, 1343 (civil rights), and 29 USC § 216(b) (equal pay).

**ANSWER:** Defendant admits the Court has subject matter jurisdiction over Plaintiff's purported claims but denies that it engaged in any unlawful conduct with respect to Plaintiff, as alleged in the Complaint or otherwise.

13.     This Court also has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over Plaintiff's state law claims for violations of the ELCRA, M.C.L.A. 600. 2919a, and Michigan common law.

**ANSWER:** Defendant admits the Court has supplemental jurisdiction over Plaintiff's purported claims but denies that it engaged in any unlawful conduct with respect to Plaintiff, as alleged in the Complaint or otherwise.

14.     This Court has personal jurisdiction over Charge, PTGi, and ANS because each maintains offices and engages in regular and systematic business and other activities within the Eastern District of Michigan through Charge Infrastructure and the acts attributed to each of these Charge Defendants that give rise to Plaintiff's claims occurred and adversely affected her within the Eastern District of Michigan.

4861-0592-0915.2 / 122481-1001

**ANSWER:** Defendant admits the Court has personal jurisdiction over Plaintiff's purported claims but denies that it engaged in any unlawful conduct with respect to Plaintiff, as alleged in the Complaint or otherwise.

15.    This Court has personal jurisdiction over the Charge Defendants because Plaintiff was employed at and performed the duties and responsibilities of her various positions with the Charge Defendants at all times relevant from the Charge Infrastructure offices which originally were in Bloomfield Hills, Michigan, and later relocated to Birmingham, Michigan.

**ANSWER:** Defendant admits the Court has personal jurisdiction over Plaintiff's purported claims but denies that it engaged in any unlawful conduct with respect to Plaintiff, as alleged in the Complaint or otherwise.

16.    Venue is proper in this district court pursuant 28 U.S.C. § 1391(b) and (c) because Plaintiff resides within the Eastern District of Michigan; Charge, PTGi, and ANS maintain offices and engage in regular and systematic business and other activities within the Eastern District of Michigan; and the events that give rise to Plaintiff's claims occurred or had consequences on Plaintiff within the Eastern District of Michigan.

**ANSWER:** Defendant admits that some of the events that Plaintiff's claim give rise to the cause of action occurred within the Eastern District of Michigan but denies that it engaged in any unlawful conduct with respect to Plaintiff, as alleged in the

4861-0592-0915.2 / 122481-1001

Complaint. Defendant further denies that PTGi has an office located in Michigan. Defendant does not otherwise contest venue.

17.     Venue also is convenient in this judicial district.

**ANSWER:** Defendant admits the allegations in Paragraph 17 of the Complaint. Defendant does not otherwise contest venue.

## COMMON FACTUAL ALLEGATIONS

### Charge Enterprise Businesses

18.     Charge is publicly traded electrical, broadband and electric vehicle ("EV") charging infrastructure company which wholly owns and operates a group of companies, including PTGi, ANS, and the Charge Infrastructure unincorporated division of ANS, among other companies.

**ANSWER:** Defendant admits the allegations in Paragraph 18 of the Complaint.

19.     Charge operates in two segments: infrastructure which has a primary focus on the EV charging business, broadband and wireless data transmission services, and electrical contracting services; and telecommunications, which provides connection of voice calls and data to global carriers.

**ANSWER:** Defendant admits the allegations in Paragraph 19 of the Complaint.

20.     Charge's primary focus purportedly consists of building, designing, and operating seamless EV charging infrastructures.

4861-0592-0915.2 / 122481-1001

**ANSWER:** Defendant denies the allegations in Paragraph 20 of the Complaint on the basis that they are untrue as alleged.

21.    Charge currently markets its capacity to design, engineer, build, and operate seamless EV charging infrastructures primarily to automotive original equipment manufacturers ("OEMs") and their franchised automotive dealerships around the county.

**ANSWER:** Defendant admits the allegations in Paragraph 21 of the Complaint.

22.    PTGi provides voice communication services for national telecom operators, mobile operators, Voice over Internet Protocol ("VOiP") carriers, wholesale carriers, prepaid operators, Value Added Resellers ("VAR") and VOiP service operators.

**ANSWER:** Defendant admits the allegations in Paragraph 22 of the Complaint.

23.    ANS is an engineering (sic), furnishing and installation provider of telecommunications for next generation broadband solutions.

**ANSWER:** Defendant admits that ANS is an engineering, furnishing and installation provider but denies that it provides monitoring and maintenance of EV charging stations.

24.    The services that ANS offers to its customers are in-building wireless, cell tower services, network infrastructure, DC power systems, and installation, monitoring and maintenance of EV charging stations.

**ANSWER:** Defendant admits the allegations in Paragraph 24 of the Complaint.

25.     ANS also provides communications system and DC power system test and turn up and 24-7 maintenance and monitoring services.

**ANSWER:** Defendant admits the allegations in Paragraph 25 of the Complaint.

26.     Charge Infrastructure has a primary focus on two fast growing sectors: EV charging and Telecommunications Network 5G, including cell tower, small cell, and in-building applications. Its services for these two sectors include: design and engineering, equipment specification and sourcing, installation, data & software solutions, and service and maintenance.

**ANSWER:** Defendant admits only that Charge Infrastructure has a primary focus on EV charging and denies the remaining allegations in Paragraph 26 of the Complaint on the basis that they are untrue as alleged.

**Ms. Antakli's Charge Employment Relationships**

27.     On July 28, 2021, Charge and PTGi hired Ms. Antakli as the Director of Administration for Charge. She commenced employment in this capacity on August 13, 2021, and reported to Charge CEO, Andrew Fox.

**ANSWER:** Defendant admits the allegations in Paragraph 27 of the Complaint.

28.     As Charge's Director of Administration, Ms. Antakli received an initial annual base salary in the amount of $150,000, various health and retirement benefits, she was eligible for annual bonuses, and she was granted options to

acquire 200,000 shares of Charge publicly traded stock with a $3.20 per share exercise price and 25% of the options vesting and exercisable on August 17, 2022, another 25% of the options vesting and exercisable on August 17, 2023, another 25% of the options vesting and exercisable on August 17, 2024, and another 25% of the options vesting and exercisable on August 17, 2025.

**ANSWER:** Defendant admits the allegations in Paragraph 28 of the Complaint.

29.    At the time of Ms. Antakli's hire by Charge and PTGi, Mr. Mark LaNeve was functioning as the Chief Business Officer for Charge.

**ANSWER:** Defendant admits the allegations in Paragraph 29 of the Complaint.

30.    Effective October 28, 2021, Charge and PTGi promoted Ms. Antakli to Chief Business Officer for Charge and to succeed Mr. LaNeve who had been promoted to President of Charge. She reported to Mr. LaNeve in this capacity until her employment was terminated, effective June 9, 2023.

**ANSWER:** Defendant admits that Plaintiff obtained the title of Chief Business Officer for Charge and that she reported to Mr. LaNeve until her termination on June 19, 2023.31.    As Chief Business Officer for Charge, Ms. Antakli led Charge's EV Charging infrastructure business, including business strategy, operations, marketing and sales operations, partner relationships, industry relations, and public relations.

4861-0592-0915.2 / 122481-1001

**ANSWER:** Defendant denies the allegations in Paragraph 31 of the Complaint on the basis that they are untrue as alleged.

32.     Ms. Antakli was very well qualified for her position as Chief Business Officer for Charge since she had previously served as President and Chief Operating Officer of Intraco Corporation, a global export management firm with a focus on architectural glass and OEM automotive distribution, and because she has extensive operational leadership experience encompassing purchasing, logistics coordination, financing mechanisms for manufacturers and customers, strategic joint ventures, and global sales strategy.

**ANSWER:** Defendant lacks sufficient information or knowledge to form a belief as to the truth of the allegations in Paragraph 32 of the Complaint and therefore, neither admits nor denies the allegations and leaves the Plaintiff to her proofs.

33.     Indeed, the Charge Defendants acknowledged both before and after Ms. Antakli's employment termination that she was a valued and productive member of Charge who provided excellent service.

**ANSWER:** Defendant denies the allegations in Paragraph 33 of the Complaint on the basis that they are untrue as alleged.

34.     As Chief Business Officer for Charge, Ms. Antakli received an initial annual base salary in the amount of $230,000, various health and retirement benefits, she was eligible for annual bonuses, and she was granted options to acquire

1,250,000 shares of Charge publicly traded stock with a $3.00 per share exercise price with 25% of the options vesting and exercisable on October 28, 2022, another 25% of the options vesting and exercisable on October 28, 2023, another 25% of the options vesting and exercisable on October 28, 2024, and another 25% of the options vesting and exercisable on October 28, 2025.

**ANSWER:** Defendant admits the allegations in Paragraph 34 of the Complaint.

### Ms. Antakli's Procurement of Substantial Business for the Benefit of Charge

35.    As Chief Business Officer for Charge during the period between October 28, 2021, and June 19, 2023, Ms. Antakli collaborated with Mr. LaNeve and other Charge leadership to successfully execute Charge's vision.

**ANSWER:** Defendant denies the allegations in Paragraph 35 of the Complaint on the basis that they are untrue as alleged.

36.    As Chief Business Officer for Charge during the period between October 28, 2021, and June 19, 2023, Ms. Antakli developed and effectuated EV charging infrastructure business development strategies for the benefit of Charge.

**ANSWER:** Defendant denies the allegations in Paragraph 36 of the Complaint on the basis that they are untrue as alleged.

37.    As Chief Business Officer for Charge during the period between October 28, 2021, and June 19, 2023, Ms. Antakli recruited qualified staff needed

4861-0592-0915.2 / 122481-1001

by the Charge Infrastructure business to effectively and efficiently develop and grow Charge's EV charging infrastructure business.

**ANSWER:** Defendant denies the allegations in Paragraph 37 of the Complaint on the basis that they are untrue as alleged.

38.     As Chief Business Officer for Charge during the period between October 28, 2021, and June 19, 2023, Ms. Antakli procured, fostered, and initiated customer relationships which generated substantial business for the Charge EV charging infrastructure business with companies, including, but not limited to, General Motors, Toyota, BMW, Stellantis, Genesis and Hyundai Motor Company and affiliated dealerships; automotive dealer groups; affiliated industry companies like Eaton Power; and Electric Vehicle Service Equipment ("EVSE") providers such as SK Signet, Autel, Blink/SemaConnect, FreeWire, and Siemens.

**ANSWER:** Defendant denies the allegations in Paragraph 38 of the Complaint on the basis that they are untrue as alleged.

39.     As Chief Business Officer for Charge during the period between October 28, 2021, and June 19, 2023, Ms. Antakli grew the Charge EV charging infrastructure business from one with negligible revenues to one with contracts for EV infrastructure projects that approximated $50 million during the first half of 2023 alone.

14

**ANSWER:** Defendant denies the allegations in Paragraph 39 of the Complaint on the basis that they are untrue as alleged.

40.     On April 19, 2023, Charge publicly reported that it had a $107 million backlog of signed infrastructure projects with EV infrastructure projects representing more than 20% of the backlog driven by the significant growth in its EV infrastructure business for which Ms. Antakli had been responsible.

**ANSWER:** Defendant admits only that Charge publicly reported that it had a $107 million backlog of signed infrastructure projects representing more than 20% of the backlog driven by the significant growth in its EV infrastructure business. Defendant denies the remaining allegations in Paragraph 40 of the Complaint.

41.     In this regard, Charge's CEO, Andrew Fox, stated:

> "We have demonstrated through our record backlog that we continue to provide essential infrastructure services in the EV charging, broadband infrastructure and electrical infrastructure markets. The growth of our backlog is a testament to the leadership of our infrastructure divisions, the processes that we are implementing, and the teams that we are building."

> "The growth of our EV charging infrastructure division, Charge Infrastructure (CI), reinforces our strategy to focus on

the EV transition as a pillar of our company's future. Cl's

backlog growth, now representing over 20% of the total,

supports that our unique and specialized offering is valued

by our clients…"

**ANSWER:** Defendant admits the allegations in Paragraph 41 of the Complaint.

42.    On August 1, 2023, Charge publicly reported that as of June 30, 2023, it had a $138 million backlog of signed infrastructure projects with EV infrastructure projects representing 34% or $47 million of the backlog driven by the significant growth in its EV infrastructure business for which Ms. Antakli had been responsible until June 19, 2023.

**ANSWER:** Defendant admits that a press release was issued on August 1, 2023, which referenced a $138 million backlog of signed infrastructure projects with EV infrastructure projects representing 34%.    Defendant denies the remaining allegations in Paragraph 42 of the Complaint on the basis that they are untrue as alleged.

### Charge's Discriminatory Compensation Practices

43.    As Chief Business Officer for Charge, Ms. Antakli was employed by the Charge Defendants in accordance with the terms of an implied employment agreement, evinced by the employment offers made to her, Charge bonus and incentive compensation plans, Charge stock option grants and applicable stock

agreements, and representations made to her by Messrs. Fox, LaNeve, Denson, and Kenneth Orr, which provided, and she otherwise legitimately expected, that she would be treated the same as the Charge Defendants comparably employed male employees with respect annual base salary, stock grants, and bonus or other incentive compensation.

**ANSWER:** Defendant denies the allegations in Paragraph 43 of the Complaint on the basis that they are untrue as alleged.

44.     Charge leadership acknowledged that Ms. Antakli's base annual salary as Chief Business Officer for Charge since 2021 was at least One Hundred Thousand Dollars less than the base annual market salary for her position and not otherwise equivalent to her value to the Charge.

**ANSWER:** Defendant denies the allegations in Paragraph 44 of the Complaint on the basis that they are untrue as alleged.

45.     The work performed by Ms. Antakli while she was employed as Chief Business Officer for Charge was at least equal to the work performed by Messrs. Denson, Fettucia, and Wojtowicz and her other male peers at Charge although her contributions to Charge greatly exceeded theirs.

**ANSWER:** Defendant denies the allegations in Paragraph 45 of the Complaint on the basis that they are untrue as alleged.

4861-0592-0915.2 / 122481-1001

46.     Ms. Antakli's job as Chief Business Officer for Charge required skill, effort, and responsibility at least equal to the jobs of Messrs. Denson, Fettucia, and Wojtowicz and her other male peers at Charge although her contributions to Charge greatly exceeded theirs.

**ANSWER:** Defendant denies the allegations in Paragraph 46 of the Complaint on the basis that they are untrue as alleged.

47.     Ms. Antakli's job as Chief Business Officer for Charge was performed under working conditions at least similar to, but actually more difficult than, those pertaining to the jobs of Messrs. Denson, Fettucia, and Wojtowicz and her other male peers at Charge although her contributions to Charge greatly exceeded theirs.

**ANSWER:** Defendant denies the allegations in Paragraph 47 of the Complaint on the basis that they are untrue as alleged.

48.     Messrs. Denson, Fettucia, and Wojtowicz and Ms. Antakli's other male peers at Charge received annual salaries, annual bonuses, stock grants, and other benefits that substantially exceeded what Ms. Antakli had received as Charge's Chief Business Officer since 2021 because they are men although her contributions to Charge greatly exceeded theirs.

**ANSWER:** Defendant denies the allegations in Paragraph 48 of the Complaint on the basis that they are untrue as alleged.

49.     Ms. Antakli received less annual base salary, annual bonuses, stock grants, and other benefits than Messrs. Denson, Fettucia, and Wojtowicz and Ms. Antakli's other male peers at Charge had received since 2021 because of her sex although her contributions to Charge greatly exceeded theirs.

**ANSWER:** Defendant denies the allegations in Paragraph 49 of the Complaint on the basis that they are untrue as alleged.

50.     Ms. Antakli received less annual base salary, annual bonuses, stock grants, and other benefits than Messrs. Denson, Fettucia, and Wojtowicz had received since 2021 because of her sex although the new business that she had procured for Charge and her contributions to the Charge Defendants greatly exceeded theirs.

**ANSWER:** Defendant denies the allegations in Paragraph 50 of the Complaint on the basis that they are untrue as alleged.

**Charge's Acknowledgement of Ms. Antakli's Exemplary Job Performance**

51.     Ms. Antakli's job performance as Chief Business Officer for Charge had been consistently evaluated as exemplary by Messrs. Fox and LaNeve.

**ANSWER:** Defendant denies the allegations in Paragraph 51 of the Complaint on the basis that they are untrue as alleged.

19

52.     Ms. Antakli had never received substantive discipline, warnings pertaining to her job performance or conduct, or notice that her job was in jeopardy throughout her Charge employment.

**ANSWER:** Defendant denies the allegations in Paragraph 52 of the Complaint on the basis that they are untrue as alleged.

53.     Indeed, the Charge Defendants acknowledged both before and after Ms. Antakli's employment termination that she was a valued and productive member of Charge who had provided excellent service.

**ANSWER:** Defendant denies the allegations in Paragraph 53 of the Complaint on the basis that they are untrue as alleged.

54.     In June, 2022, Ms. Antakli was named one of Insider's Power Players because of her contributions to the growth of the EV industry.

**ANSWER:** Defendant lacks sufficient information or knowledge to form a belief as to the truth of the allegations in Paragraph 54 of the Complaint and therefore, denies the same.

55.     In late March, 2023, Mr. LaNeve exchanged emails with Mr. Denson and Kenneth Orr, a Charge Board member with a substantial investment in the company, concerning a performance-based bonus plan he had developed for the benefit of Charge Infrastructure employees which included consideration that would have been due to Ms. Antakli "in a reflection of her value to the company."

**ANSWER:** Defendant denies the allegations in Paragraph 55 of the Complaint on the basis that they are untrue as alleged.

56.     On June 2, 2023, Mr. Fox sent an email to Ms. Antakli in which he acknowledged "the remarkable job" Ms. Antakli had been doing and stated, "Your dedication is deeply appreciated."

**ANSWER:** Defendant admits the allegations in Paragraph 56 of the Complaint.

57.     On June 22, 2023, Ms. Antakli was notified by the publication, Crain Communications in Detroit, Michigan, that she had been selected as a Notable Leader in Energy by its editorial team because her accomplishments on behalf of Charge.

**ANSWER:** Defendant lacks sufficient information or knowledge to form a belief as to the truth of the allegations in Paragraph 57 of the Complaint and therefore, neither admits nor denies the allegations and leaves the Plaintiff to her proofs.

### Ms. Antakli's Employment Termination Notwithstanding Charge's Acknowledgment of Her Exemplary Job Performance

58.     During the late Fall, 2022, or early Winter, 2023, Mr. Denson told Ms. Antakli and Mr. LaNeve that the Charge Defendants had preferred that a male industry expert be hired or assigned to the role as Chief Business Officer for Charge because of the nature of the EV business and industry.

**ANSWER:** Defendant denies the allegations in Paragraph 58 of the Complaint on the basis that they are untrue as alleged.

59.     On June 19, 2023, Ms. Antakli was notified by Mr. LaNeve and Ms. Jamie Yung, Charge's Human Resources Director, that her Charge employment had been terminated without cause.

**ANSWER:** Defendant admits the allegations in Paragraph 59 of the Complaint.

60.     Ms. Antakli was given no other reason for this unjustified, discriminatory adverse action.

**ANSWER:** Defendant denies the allegations in Paragraph 60 of the Complaint on the basis that they are untrue as alleged.

61.     Ms. Antakli was advised that the decision to terminate her employment was made because Messrs. Fox, Denson, Fettucia, and Wojtowicz had wanted her "out" or "gone" although Ms. Antakli had reported to Mr. LaNeve and she did not directly report to any of them.

**ANSWER:** Defendant denies the allegations in Paragraph 61 of the Complaint on the basis that they are untrue as alleged.

62.     Messrs. Fox, Denson, Fettucia, and Wojtowicz had wanted her "out" or "gone" and made the decision to terminate Ms. Antakli's employment although she had grown the Charge EV charging infrastructure business from one with negligible revenues to one with contracts for EV charging infrastructure projects that

approximated $50 million during the first half of 2023 alone and the Charge Defendants had routinely acknowledged both before and after Ms. Antakli's employment termination that she was a valued and productive member of Charge who provided excellent service, who had done a "remarkable job," and whose "dedication is deeply appreciated."

**ANSWER:** Defendant denies the allegations in Paragraph 62 of the Complaint on the basis that they are untrue as alleged.

63.     Messrs. Fox, Denson, Fettucia, and Wojtowicz had wanted her "out" or "gone" and made the decision to terminate Ms. Antakli's employment because they were intimidated by her as a strong and very effective woman business leader who freely expressed her opinions about best and effective business practices and business development strategies.

**ANSWER:** Defendant denies the allegations in Paragraph 63 of the Complaint on the basis that they are untrue as alleged.

64.     Messrs. Fox, Denson, Fettucia, and Wojtowicz had wanted her "out" or "gone" and made the decision to terminate Ms. Antakli's employment because they had decided consistent with statements previously made by Mr. Denson to Ms. Antakli and Mr. LaNeve that they had preferred that a man be hired or assigned to the Charge Chief Business Officer role.

23

**ANSWER:** Defendant denies the allegations in Paragraph 64 of the Complaint on the basis that they are untrue as alleged.

65.     Charge later assigned and/or hired one or more men to assume Ms. Antakli's former responsibilities, including Messrs. Fettucia and Wojtowicz and Mr. Samuel Barnes, whom Ms. Antakli had recently hired, and recently announce that Mr. Paul Williams had succeeded to her former role.

**ANSWER:** Defendant denies the allegations in Paragraph 65 of the Complaint on the basis that they are untrue as alleged.

66.     The Charge Defendants' post hac purported reasons for under compensating Ms. Antakli and the termination of her employment are not true and are pre-texts for discrimination against her on account of her sex.

**ANSWER:** Defendant denies the allegations in Paragraph 66 of the Complaint on the basis that they are untrue as alleged.

## COUNT I
## VIOLATION OF THE ELLIOTT-LARSEN CIVIL RIGHTS ACT
## SEX DISCRIMINATION

67.     Plaintiff re-alleges and incorporates by reference each and every paragraph of this Complaint as if hereinafter reiterated paragraph by paragraph.

**ANSWER:** Defendant realleges and incorporates by reference its answers to Paragraphs 1-66 of Plaintiff's Complaint as if fully set forth herein.

24

68.     At all times relevant, Charge, PTGi, and ANS were each an "employer"

of Plaintiff as this term is defined by section 20l(a) of the Michigan Elliott-Larsen

Civil Rights Act, MCL §§ 37.2101, *et seq.* ("ELCRA").  *See* MCL § 37.220l(a).

**ANSWER:**  Paragraph 68 of the Complaint contains a legal conclusion to which no

response is required. To the extent a response is required, Defendant admits only

that Defendant Charge was an employer as defined by the ELCRA.

69.     At all times relevant, Messrs. Fox, Denson, Fettucia, and Wojtowicz

were each a "person" as this term is defined by section 103(g) of the Michigan

Elliott-Larsen Civil Rights Act, MCL §§ 37.2101, *et seq.* ("ELCRA"), *see* MCL

§ 37.2103(g), and was an agent of Charge, PTGi, and ANS with respect to terms and

conditions of and the termination of Plaintiff's former Charge employment.

**ANSWER:**  Paragraph 69 of the Complaint contains a legal conclusion to which no

response is required. To the extent a response is required, Defendant lacks sufficient

information or knowledge to form a belief as to the truth of the allegations in

Paragraph 69 of the Complaint and therefore, denies the same.

70.     At all times relevant herein, under the ELCRA, Plaintiff had a right to

employment with Charge and PTGi free from discrimination against her based on

her sex.

**ANSWER:** Paragraph 70 of the Complaint contains a legal conclusion to which no response is required. To the extent a response is required, Defendant denies any allegations of discrimination.

71.    Charge, PTGi, and ANS and Messrs. Fox, Denson, Fettucia, and Wojtowicz violated Plaintiff's rights under the ELCRA by:

> B.    providing her with annual salary, annual bonuses, stock grants, and other benefits that were less than what Messrs. Denson, Fettucia, and Wojtowicz and Ms. Antakli's other male peers at Charge had received although the new business that she had procured for Charge and her contributions to Charge greatly exceeded theirs because of her sex; and

> C.    terminating her employment without cause and because of her sex.

**ANSWER:** Defendant denies the allegations in Paragraph 71 of the Complaint on the basis that they are untrue as alleged.

72.    The discriminatory practices at issue were intentional and willful and were committed with malice and with reckless indifference to Plaintiff's rights and sensibilities.

**ANSWER:** Defendant denies the allegations in Paragraph 72 of the Complaint on the basis that they are untrue as alleged.

73.     As a direct and proximate result of Defendants' violation of Plaintiff's civil rights as set forth by the ELCRA, she has suffered damages, including but not limited to, loss of earnings, loss of earning capacity, lost future earnings, the lost value of fringe and retirement benefits, lost value of Charge stock and stock options, lost job and career opportunities, damage to her good name and reputation in the community, mental and emotional distress, humiliation and embarrassment, loss of enjoyment of the ordinary pleasures of everyday life, and the loss of the ability to pursue employment of choice.

**ANSWER:** Defendant denies the allegations in Paragraph 73 of the Complaint on the basis that they are untrue as alleged.

**COUNT II**
**VIOLATION OF THE EQUAL PAY ACT OF 1963**

74.     Plaintiff re-alleges and incorporates by reference each and every paragraph of this Complaint as if hereinafter re-iterated paragraph by paragraph.

**ANSWER:** Defendant realleges and incorporates by reference its answers to Paragraphs 1-73 of Plaintiff's Complaint as if fully set forth herein.

75.     At all times relevant, Charge, PTGi, and ANS were each an "employer" of and "employ[ed]") Plaintiff as these terms are defined by section 203(d) and (g) of the Fair Labor Standards Act, 29 U.S.C. §§ 201, *et seq. See* 29 U.S.C. § 203 (d) and (g).

4861-0592-0915.2 / 122481-1001

**ANSWER:** Paragraph 75 of the Complaint contains a legal conclusion to which no response is required. To the extent a response is required, Defendant admits only that Charge was an employer as defined by the Fair Labor Standards Act.

76.   At all times relevant, Charge, PTGi, and ANS were each an "enterprise" as this term is defined by section 203(r) of the Fair Labor Standards Act, 29 U.S.C. §§ 201, *et seq. See* 29 U.S.C. § 203(r).

**ANSWER:** Paragraph 76 of the Complaint contains a legal conclusion to which no response is required. To the extent a response is required, Defendant admits Charge was an enterprise as defined by the Fair Labor Standards Act.

77.   At all times relevant, Plaintiff was an "employee" of Charge, PTGi, and ANS as this term is defined by section 203(e) of the Fair Labor Standards Act, 29 U.S. C. §§ 201, *et seq. See* 29 U.S.C. § 203 (e).

**ANSWER:** Paragraph 77 of the Complaint contains a legal conclusion to which no response is required. To the extent a response is required, Defendant lacks sufficient information or knowledge to form a belief as to the truth of the allegations in Paragraph 77 of the Complaint and therefore, neither admits nor denies the allegations and leaves the Plaintiff to her proofs.

78.   At all times relevant, Messrs. Fox and Denson were each a "person" as this term is defined by section 203(a) of the Fair Labor Standards Act, 29 U.S. C. §§ 201, *et seq. See* 29 U.S.C. § 203 (a).

4861-0592-0915.2 / 122481-1001

**ANSWER:** Paragraph 78 of the Complaint contains a legal conclusion to which no response is required. To the extent a response is required, Defendant admits that Messers, Fox and Denson were persons as defined by the Fair Labor Standards Act.

79.    The Equal Pay Act of 1963 ("EPA), 29 U.S.C. § 206(d), is an amendment to the Fair Labor Standards Act and prohibits "employer[s] … [from] discriminat[ing] ...  on the basis of sex by paying wages to employees [...] at a rate less than the rate [paid] to employees of the opposite sex[...] for equal work on jobs [requiring] equal skill, effort, and responsibility, and which are performed under similar working conditions[.]"

**ANSWER:** Paragraph 79 of the Complaint contains statements of law which may or may not be accurate but to which no response is required.

80.    The work performed by Plaintiff while she was employed as Chief Business Officer for Charge was at least equal to the work performed by Messrs. Denson, Fettucia, and Wojtowicz and her other male peers at Charge although her contributions to Charge greatly exceeded theirs.

**ANSWER:** Defendant denies the allegations in Paragraph 80 of the Complaint on the basis that they are untrue as alleged.

81.    Plaintiff's job as Chief Business Officer for Charge required skill, effort, and responsibility at least equal to the jobs of Messrs. Denson, Fettucia, and

Wojtowicz and her other male peers at Charge although her contributions to Charge greatly exceeded theirs.

**ANSWER:** Defendant denies the allegations in Paragraph 81 of the Complaint on the basis that they are untrue as alleged.

82.    Plaintiff's job as Chief Business Officer for Charge was performed under working conditions at least similar to, but actually more difficult than, those pertaining to the jobs of Messrs. Denson, Fettucia, and Wojtowicz and her other male peers at Charge although her contributions to Charge greatly exceeded theirs.

**ANSWER:** Defendant denies the allegations in Paragraph 82 of the Complaint on the basis that they are untrue as alleged.

83.    The Charge Defendants' representatives violated Plaintiff's rights under the EPA by:

>       D.    Failing to provide Plaintiff with a rate of pay inclusive of annual base salary, annual bonuses, stock grants, and other benefits that was equal to what Messrs. Denson, Fettucia, and Wojtowicz and Plaintiff's other male peers at Charge had received and continue to receive because of her sex although the new business that she had procured for Charge and her contributions to Charge greatly exceeded theirs.

**ANSWER:** Defendant denies the allegations in Paragraph 83 of the Complaint on the basis that they are untrue as alleged.

84.     The discriminatory practices at issue were intentional and willful and were committed with malice and with reckless indifference to Plaintiff's rights and sensibilities.

**ANSWER:** Defendant denies the allegations in Paragraph 84 of the Complaint on the basis that they are untrue as alleged.

85.     As a direct and proximate result of Defendants' violation of Plaintiff's civil rights as set forth in the EPA, Plaintiff has and will continue to suffer damages, including but not limited to, loss of earnings, loss of earning capacity, lost future earnings, the lost value of fringe and retirement benefits, lost value of Charge stock and stock options, lost job and career opportunities, damage to her good name and reputation in the community, mental and emotional distress, humiliation and embarrassment, loss of enjoyment of the ordinary pleasures of everyday life, and the loss of the ability to pursue employment of choice.

**ANSWER:** Defendant denies the allegations in Paragraph 85 of the Complaint on the basis that they are untrue as alleged.

## COUNT III
## BREACH OF CONTRACT

86.     Plaintiff re-alleges and incorporates by reference the allegations stated in the preceding paragraphs as if reiterated paragraph by paragraph in this Count.

31

**ANSWER:** Defendant realleges and incorporates by reference its answers to Paragraphs 1-85 of Plaintiff's Complaint as if fully set forth herein.

87.    Plaintiff accepted her position as Chief Business Officer for Charge in consideration for the Charge Defendants' agreement, and she otherwise legitimately expected, that she would be treated the same as the Charge Defendants comparably employed male employees with respect annual base salary, stock grants, and bonus or other incentive compensation.

**ANSWER:** Defendant denies the allegations in Paragraph 87 of the Complaint on the basis that they are untrue as alleged.

88.    The Charge Defendants breached Plaintiff's employment contract during the period since 2021 when they paid her a base annual salary as Chief Business Officer for Charge that was at least One Hundred Thousand Dollars less than the market base annual salary for her position, otherwise was not equivalent to her value to the Charge Defendants, and was substantially less than the base annual salaries tendered to Messrs. Denson, Fettucia, and Wojtowicz and her other male peers at Charge although her contributions to Charge greatly exceeded theirs.

**ANSWER:** Defendant denies the allegations in Paragraph 88 of the Complaint on the basis that they are untrue as alleged.

89.    The Charge Defendants breached Plaintiff's employment contract during the period since 2021 when they paid her a base annual salary and provided

her with stock grants and bonus or other incentive compensation as Chief Business Officer for Charge that were less than what had been received by Messrs. Denson, Fettucia, and Wojtowicz and Plaintiff's other male peers at Charge although her contributions to Charge greatly exceeded theirs.

**ANSWER:** Defendant denies the allegations in Paragraph 89 of the Complaint on the basis that they are untrue as alleged.

90.     As a direct and proximate result of the Charge Defendants' breaches of its contract, Plaintiff has and will continue to suffer damages, including but not limited to, loss of earnings, loss of earning capacity, lost future earnings, the lost value of fringe and retirement benefits, lost value of Charge stock and stock options, lost job and career opportunities, damage to her good name and reputation in the community, mental and emotional distress, humiliation and embarrassment, loss of enjoyment of the ordinary pleasures of everyday life, and the loss of the ability to pursue employment of choice.

**ANSWER:** Defendant denies the allegations in Paragraph 90 of the Complaint on the basis that they are untrue as alleged.

**COUNT IV**
**PROMISSORY ESTOPPEL**

91.     Plaintiff re-alleges and incorporates by reference the allegations stated in the preceding paragraphs as if reiterated paragraph by paragraph in this Count.

33

**ANSWER:** Defendant realleges and incorporates by reference its answers to Paragraphs 1-90 of Plaintiff's Complaint as if fully set forth herein.

92.     The Charge Defendants made enforceable promises to Plaintiff that she would be treated the same as the Charge Defendants comparably employed male employees with respect annual base salary, stock grants, and bonus or other incentive compensation to induce her to became the Chief Business Officer for Charge, evinced by the employment offers made to her, Charge bonus and incentive compensation plans, Charge stock option grants and applicable stock agreements, and representations made to her by Messrs. Fox, LaNeve, Denson, and Kenneth Orr.

**ANSWER:** Defendant denies the allegations in Paragraph 92 of the Complaint on the basis that they are untrue as alleged.

93.     The Charge Defendants reasonably expected that their promises to Plaintiff would induce her to grow the Charge EV charging infrastructure business from one with negligible revenues to one with contracts for EV charging infrastructure projects that approximated $50 million during the first half of 2023 alone.

**ANSWER:** Defendant denies the allegations in Paragraph 93 of the Complaint on the basis that they are untrue as alleged.

94.     In reliance upon the promises made to her, Plaintiff grew the Charge EV charging business from one with negligible revenues to one with contracts for

4861-0592-0915.2 / 122481-1001

EV infrastructure projects that approximated $50 million during the first half of 2023 alone.

**ANSWER:** Defendant denies the allegations in Paragraph 94 of the Complaint on the basis that they are untrue as alleged.

95.     The Charge Defendants breached the promises made to Plaintiff during the period since 2021 when they paid her a base annual salary as Chief Business Officer for Charge that was at least One Hundred Thousand Dollars less than the market base annual salary for her position,  otherwise was not equivalent to her value to the Charge Defendants, and was  substantially less than the base annual salaries tendered to Messrs. Denson, Fettucia, and Wojtowicz and her other male peers at Charge although her contributions to Charge greatly exceeded theirs.

**ANSWER:** Defendant denies the allegations in Paragraph 95 of the Complaint on the basis that they are untrue as alleged.

96.     The Charge Defendants breached the promises made to Plaintiff during the period since 2021 when they paid her a base annual salary and provided her with stock grants and bonus or other incentive compensation as Chief Business Officer for Charge that were less than what had been received by Messrs. Denson, Fettucia, and  Wojtowicz and Plaintiff's other male peers at Charge although her contributions to Charge greatly exceeded theirs.

4861-0592-0915.2 / 122481-1001

**ANSWER:** Defendant denies the allegations in Paragraph 96 of the Complaint on the basis that they are untrue as alleged.

97.     As a direct and proximate result of the Charge Defendants' breach of promises to Plaintiff, Plaintiff has and will continue to suffer damages, including but not limited to, loss of earnings, loss of earning capacity, lost future earnings, the lost value of fringe and retirement benefits, lost value of Charge stock and stock options, lost job and career opportunities, damage to her good name and reputation in the community, mental and emotional distress, humiliation and embarrassment, loss of enjoyment of the ordinary pleasures of everyday life, and the loss of the ability to pursue employment of choice.

**ANSWER:** Defendant denies the allegations in Paragraph 97 of the Complaint on the basis that they are untrue as alleged.

## COUNT V
## UNJUST ENRICHMENT

98.     Plaintiff re-alleges and incorporates by reference the allegations stated in the preceding paragraphs as if reiterated paragraph by paragraph in this Count.

**ANSWER:** Defendant realleges and incorporates by reference its answers to Paragraphs 1-97 of Plaintiff's Complaint as if fully set forth herein.

99.     During her tenure with Charge, Plaintiff grew the Charge EV charging business from one with negligible revenues to one with contracts for EV

36

infrastructure projects that approximated $50 million during the first half of 2023 alone.

**ANSWER:** Defendant denies the allegations in Paragraph 99 of the Complaint on the basis that they are untrue as alleged.

100.   Throughout this period of time, the Charge Defendants intentionally and deceptively paid Plaintiff a base annual salary and provided her with stock grants and bonus or other incentive compensation as Chief Business Officer for Charge that were less than what had been received by Messrs. Denson, Fettucia, and Wojtowicz and Plaintiff's other male peers at Charge although her contributions to Charge greatly exceeded theirs.

**ANSWER:** Defendant denies the allegations in Paragraph 100 of the Complaint on the basis that they are untrue as alleged.

101.   Throughout this period of time, the Charge Defendants received the benefit of Plaintiff's procurement of new business for Charge, but intentionally and deceptively failed and refused to pay Plaintiff for the fair and reasonable value of her new business procurement.

**ANSWER:** Defendant denies the allegations in Paragraph 101 of the Complaint on the basis that they are untrue as alleged.

4861-0592-0915.2 / 122481-1001

102.   The Charge Defendants have been unjustly enriched at Plaintiff's expense by their intentional and deceptive failure and refusal to pay Plaintiff for the fair and reasonable value of her new business procurement.

**ANSWER:** Defendant denies the allegations in Paragraph 102 of the Complaint on the basis that they are untrue as alleged.

103.   As a direct and proximate result of the Charge Defendants' breach of their its duties to pay fair compensation to Plaintiff for new business she had procured, Defendants have been unjustly enriched by amounts that exceed One Million Dollars and Plaintiff has and will continue to suffer damages, including but not limited to, loss of earnings, loss of earning capacity, lost future earnings, the lost value of fringe and retirement benefits, lost value of Charge stock and stock options, lost job and career opportunities, damage to her good name and reputation in the community, mental and emotional distress, humiliation and embarrassment, loss of enjoyment of the ordinary pleasures of everyday life, and the loss of the ability to pursue employment of choice.

**ANSWER:** Defendant denies the allegations in Paragraph 103 of the Complaint on the basis that they are untrue as alleged.

## COUNT VI
## CONVERSION

104.   Plaintiff re-alleges and incorporates by reference the allegations stated in the preceding paragraphs as if reiterated paragraph by paragraph in this Count.

**ANSWER:** Defendant realleges and incorporates by reference its answers to Paragraphs 1-103 of Plaintiff's Complaint as if fully set forth herein.

105.   During her tenure with Charge, Plaintiff grew the Charge EV charging business from one with negligible revenues to one with contracts for EV infrastructure projects that approximated $50 million during the first half of 2023 alone.

**ANSWER:** Defendant denies the allegations in Paragraph 105 of the Complaint on the basis that they are untrue as alleged.

106.   Throughout this period of time, the Charge Defendants intentionally and deceptively paid Plaintiff a base annual salary and provided her with stock grants and bonus or other incentive compensation as Chief Business Officer for Charge that were less than what had been received by Messrs. Denson, Fettucia, and Wojtowicz and Plaintiff's other male peers at Charge although her contributions to Charge greatly exceeded theirs.

**ANSWER:** Defendant denies the allegations in Paragraph 106 of the Complaint on the basis that they are untrue as alleged.

4861-0592-0915.2 / 122481-1001

107.   Throughout this period of time, the Charge Defendants received the benefit of Plaintiff's procurement of new business for Charge, but intentionally and deceptively failed and refused to pay Plaintiff for the fair and reasonable value of her new business procurement.

**ANSWER:** Defendant denies the allegations in Paragraph 107 of the Complaint on the basis that they are untrue as alleged.

108.   Throughout this period of time, the Charge Defendants and/or their executive and other representatives converted the amount of compensation that should have been paid to Plaintiff to their own use in violation of Michigan common law and MCLA 600.2919a.

**ANSWER:** Defendant denies the allegations in Paragraph 108 of the Complaint on the basis that they are untrue as alleged.

109.   Pursuant to MCLA 600.2919a, Plaintiff is entitled to three times the actual damages she has sustained due to the past and continuing acts of conversion by the Charge Defendants and/or their executive and other representatives.

**ANSWER:** Paragraph 109 of the Complaint contains a legal conclusion to which no response is required. To the extent a response is required, Defendant denies the allegations in Paragraph 109 of the Complaint.

110.   As a direct and proximate result of Defendants acts of conversion, Defendants have been unjustly enriched by amounts that exceed One Million Dollars

and Plaintiff has and will continue to suffer damages, including but not limited to, loss of earnings, loss of earning capacity, lost future earnings, the lost value of fringe and retirement benefits, lost value of Charge stock and stock options, lost job and career opportunities, damage to her good name and reputation in the community, mental and emotional distress, humiliation and embarrassment, loss of enjoyment of the ordinary pleasures of everyday life, and the loss of the ability to pursue employment of choice.

**ANSWER:** Defendant denies the allegations in Paragraph 110 of the Complaint on the basis that they are untrue as alleged.

**WHEREFORE,** Plaintiff Nicole Antakli requests that this Court enter an Order and Judgment against the Charge Defendants awarding to Plaintiff:

a.      Compensatory damages to which she is found to be entitled, inclusive of back and front pay, bonus, stock awards and options, reimbursement for costs incurred by Plaintiff to replace lost benefits, and other compensation lost by Plaintiff due to discrimination against her and other violations of her statutory, common law and contractual rights;

b.      Liquidated damages for their violations of the Equal Pay Act of 1963;

c.      Treble damages for violation of MCLA 600.2919a;

d.      Compensatory damages for mental anguish, emotional distress, humiliation and injury to her reputation;

41

e.      Punitive and/or exemplary damages;

f.      Reasonable attorney fees and costs, including expert witness fees and pre and post judgment interest;

g.      Injunctive or equitable relief to foreclose further violations of the ELCRA and EPA; and

h.      Such other legal or equitable relief as this Court deems appropriate.

**ANSWER:** Defendant denies that Plaintiff is entitled to any relief set forth in the above WHEREFORE Paragraph, including subparts (a) through (h) of her Complaint.

## AFFIRMATIVE AND OTHER DEFENSES

Without admitting any of the allegations in the Complaint and without admitting or acknowledging that it bears any burden of proof as to any of them, Defendant asserts the following affirmative and/or special defenses to Plaintiff's Complaint. Defendant intends to rely upon any additional defenses that become available or apparent during pretrial proceedings and discovery in this action.

## FIRST DEFENSE

The Complaint fails to state a factually based claim upon which relief may be granted.

4861-0592-0915.2 / 122481-1001

## SECOND DEFENSE

Plaintiff claims are barred, in whole or in part, by the applicable statutes of limitation.

## THIRD DEFENSE

Plaintiff's claims may be barred, in whole or in part, by the equitable doctrines of unclean hands, laches, consent, waiver and/or estoppel.

## FOURTH DEFENSE

Any actions taken by Defendant with respect to Plaintiff, were for legitimate, non-discriminatory, and non-retaliatory reasons.

## FIFTH DEFENSE

Plaintiff's claims for ongoing damages are speculative, uncertain, and contrary to the parties at-will relationship.

## SIXTH DEFENSE

Defendant relies on all other defenses afforded to it under the statutes identified in Plaintiff's Complaint.

## SEVENTH DEFENSE

Defendant took reasonable steps to comply with anti-discrimination, anti-harassment, and anti-retaliation laws and any acts in violation of the statutes were in contravention of Defendant's good faith efforts to comply.

4861-0592-0915.2 / 122481-1001

## EIGHTH DEFENSE

Plaintiff's claims for damages are barred to the extent that she has failed to make reasonable efforts to mitigate her damages, if any.

## NINTH DEFENSE

To the extent, if any, that Defendant is found to have violated the Michigan Elliott-Larsen Civil Rights Act with respect to Plaintiff's Complaint (which Defendant denies), said violation was not willful.

## TENTH DEFENSE

If Plaintiff is found to have engaged in terminable misconduct in her acquisition of and/or during her employment with Defendant, the after-acquired evidence doctrine bars Plaintiff from recovering any front pay damages or obtaining reinstatement to her employment with Defendant, and any back pay damages are limited to the period between Plaintiff's alleged unlawful conduct and Defendant's discovery of Plaintiff's misconduct.

## ELEVENTH DEFENSE

Defendant relies on all other defenses afforded to it under the statutes identified in Plaintiff's Complaint.

## RESERVATION OF RIGHT

Defendant reserves the right to file, upon completion of its investigation and discovery, such amended answers and defense as may be appropriate.

4861-0592-0915.2 / 122481-1001

WHEREFORE, Defendant asks that Plaintiff's Complaint be dismissed in its entirety and that a judgment of no cause for action be entered in favor of Defendant together with costs and attorney fees.

Respectfully submitted,

/s/ Robert Tice
Robert Tice (P29435)
rtice@littler.com
LITTLER MENDELSON, P.C.
200 Renaissance Center
Suite 3110
Detroit, MI 48243
Telephone: 313.446.6400
Facsimile:  313.446.6405

Attorneys for Defendants
Charge Enterprises, Inc., ANS
Advanced Network Services, LLC, and
PTGi International Carrier Services, Inc.

Dated: December 5, 2023

## CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing document was served upon all parties and/or attorneys of record to the above cause herein at their respective addresses as disclosed on the pleadings on December 5, 2023, via:

| _____ | U. S. Mail | _____ | Facsimile |
| X | ECF Filing | _____ | Hand Delivery |
| _____ | E-Mail | _____ | Federal Express |

/s/ Robert Tice
Robert Tice

4861-0592-0915.2 / 122481-1001